

# The Attorney General of Texas

June 21, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable W. E. Snelson
Senator of the State of Texas
Capitol Building
Austin, Texas 78711

Opinion No. H- 1191

Re: Whether tax increment bonds can be issued without a referendum.

Dear Senator Snelson:

You have asked whether tax increment bonds may be issued by a city for the purpose of aiding the planning or the carrying out of an Urban Renewal Project under the management of an established Urban Renewal Agency duly created pursuant to a prior election authorizing urban renewal powers. Specifically you want to know whether, prior to the passage of the constitutional amendment on tax increment bonds, a city may issue these bonds on the basis of a prior election authorizing urban renewal rather than on the basis of an election specifically authorizing tax increment financing.

These questions require consideration of two items of recent legislation passed by the 65th Legislature. First, the Texas Tax Increment Act of 1977, Senate Bill 635, Acts 1977, 65th Leg., ch. 361, at 956, codified as article 1066d, V.T.C.S., authorizes municipalities to use tax increment financing for the redevelopment of blighted commercial areas. Among the various powers conferred under section 4 is the general power to issue tax increment bonds. Section 8 deals more specifically with tax increment bonds and provides in pertinent part:

> (b) Tax increment bonds issued under this Act, together with interest thereon and income therefrom, shall be exempt from all taxes. Bonds issued under this Act shall be authorized by resolution or ordinance of the governing body . . . .

Other sections of the Act detail specific requirements concerning designation of development districts (section 5), computation of tax increments (section 6), allocation of tax collections and tax increments (section 7), and annual reports (section 9). Finally, section 13 declares:

This Act takes effect only if and when the constitutional amendment proposed by S.J.R. No. 44, 65th Legislature, is adopted by the qualified electors of this state.

The proposed constitutional amendment referred to amends article 8 of the Texas Constitution by granting to the Legislature the power to authorize municipalities to issue tax increment bonds notwithstanding section 1 or section 14 of article 8. It further provides for an election on the amendment in November, 1978.

The Legislature must be presumed to have carefully chosen the statutory language. Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593, 600 (Tex. 1975); Perkins v. State, 367 S.W.2d 140, 146 (Tex. 1963). Therefore, we believe section 13 compels the conclusion that a municipality has no authority to issue tax increment bonds under Senate Bill 635 prior to voter approval of the proposed constitutional amendment.

Amendments to the Urban Renewal Law, article 12691-3, V.T.C.S., approved by the 65th Legislature in House Bill 2028, Acts 1977, 65th Leg., ch. 850, at 2126-33, contain provisions parallel to those appearing in the Texas Tax Increment Act. Approval of the use of the tax increment method of financing is specifically provided for in the following new section:

> Sec. 5b. A city may not use the tax increment method of financing prescribed by Sections 22a, 22b, 22c, and 22d of this Act unless a majority of the qualified voters of the city voting on the question, who own taxable property within the city that is duly rendered for taxation, approve that method of financing in an election held by the city. At an election held under this section, the ballots shall provide for voting for or against the proposition: 'Use of tax increment financing for urban renewal purposes.' An election under this section may be held in conjunction with an election held under Section 5 or 5a of this Act. This referendum shall not be necessary if the constitutional amendment on tax increment financing is approved by the voters.

(Emphasis added).

The plain meaning of this section evidences the legislative intent that an election is required prior to approval of the constitutional amendment proposed by S.J.R. No. 44, 65th Legislature, to approve the tax increment method of financing set out in other sections of the Urban Renewal Law. This election may be separate

from or in conjunction with the election required under section 5 or 5a to approve an urban renewal project, but the specific issue of whether the tax increment method of financing is to be utilized must be presented. The wording in a statute is to be given its literal interpretation when that wording is clear and unambiguous. See, e.g., Board of Insurance Comm'rs v. Guardian Life Ins. Co., 180 S.W.2d 906, 909 (Tex. 1944).

Since your questions do not raise the issue, we reserve comment on any constitutional problems including any which might be associated with the role of the county tax assessor-collector or with the issuance of tax increment bonds by cities with outstanding general obligation bonds.

## SUMMARY

The Texas Tax Increment Act will not be effective unless the companion constitutional amendment is adopted in November, 1978. Prior to the passage of that amendment, the Urban Renewal Law, article 1269l-3, V.T.C.S., requires that use of tax increment financing under that statute must be approved in an election held by the city.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst